**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**CONNIE GOLD**<br>[DOB: 10/13/1964],<br><br>Defendant. | No. 26-03161-01-CR-S-MDH<br><br>**COUNT 1:**<br>18 U.S.C. § 1343<br>(Wire Fraud)<br>NMT 20 Years Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years Supervised Release<br>Class C Felony<br><br>**FORFEITURE ALLEGATION:**<br>18 U.S.C. § 981(a)(1)(C)<br><br>Mandatory Restitution;<br>$100 Special Assessment |

**I N F O R M A T I O N**

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to the Information:

**Introduction and Background**

1. The defendant, **CONNIE GOLD**, resided in Greene County, Missouri, a location in the Western District of Missouri. From on or about May 24, 2021, and through on or about September 10, 2024, the defendant was a "relationship manager" for a financial institution ("The Bank") that had a branch in Springfield, Greene County, Missouri and was headquartered in the state of Texas.

2. As a relationship manager, the defendant maintained contact with various customers of The Bank and assisted such customers with various financial matters involving various types of financial accounts and lines of credit. These customers included residents of the Western District of Missouri and residents of other states.

3. The Bank was a financial institution as that term was defined in Title 18, United States Code, Section 20(1), as it was an insured depository institution under the Federal Deposit Insurance Act, Title 12, United States Code, Section 1813(c)(2).

4. VICTIMS-1 were each a resident of Rogersville, Missouri, within the Western District of Missouri. who were also customers of The Bank who maintained funds at The Bank through their joint financial accounts.

5. VICTIM-2 was a resident of Los Angeles, California who was also a customer of The Bank who held a line of credit and maintained funds at The Bank through financial accounts.

6. VICTIM-3 was a resident of Ozark, Missouri, within the Western District of Missouri, who was also a customer of The Bank who maintained funds at The Bank through financial accounts.

7. Neither The Bank, VICTIMS-1, VICTIM-2, or VICTIM-3 authorized the defendant to obtain and use any of their funds for the defendant's own purposes.

## COUNT 1

### The Scheme

8. Beginning at least as early as on or about May 24, 2021, and continuing until on or about September 10, 2024, said dates being approximate, in Greene County, in the Western District of Missouri, and elsewhere, the defendant voluntarily and intentionally devised and executed a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, from The Bank and certain clients, including VICTIMS-1, VICTIM-2, and VICTIM-3.

9. As a part of her scheme, the defendant utilized her position as "relationship manager" at The Bank to make false representations to various customers of The Bank, and to

employees of The Bank in order to divert funds from her victim customers and The Bank to herself so that she could use such funds for her own personal purposes. The defendant did not have authorization from The Bank, VICTIMS-1, VICTIM-2, or VICTIM-3 to conduct such transactions.

10. As a further part of her scheme, the defendant would obtain funds from customer accounts by approaching bank tellers and telling them that she had been asked by a customer to withdraw cash from one of their accounts, which, as she then and there knew, was untrue. The bank teller, relying on the defendant's representations, her position with The Bank, and the trust such customers placed in the defendant through her employment as "relationship manager" would then withdraw the requested amount of funds from that customer's account, give the defendant the cash, and fill out a bank withdrawal slip with a note of "Per Connie Gold" or have the defendant sign the withdrawal slip. The defendant would then deposit the cash into her own financial accounts and use the funds for her own purposes.

11. As a further part of the defendant's scheme, she would also obtain funds from The Bank and from customers of The Bank by utilizing customer lines of credit and, in at least one case, opening a line of credit for a customer without that customer's knowledge or authorization. The defendant would then use the funds obtained through customer lines of credit for her own purposes.

12. As a further part of her scheme, the defendant obtained funds from various financial accounts of VICTIMS-1 through cash withdrawals, without the knowledge or authorization of VICTIMS-1. As a part of these cash withdrawals, the defendant completed notes associated with these withdrawals that indicated the withdrawals were done "per Connie Gold" or "per [one of VICTIMS-1]", the latter of which was untrue, as she then and there knew, which was meant to

conceal these fraudulent transactions from The Bank and its employees. For example, on or about August 16, 2024, the defendant obtained $2,407 from an account of VICTIMS-1, through a cash withdrawal, without the knowledge or authorization of VICTIMS-1. VICTIMS-1 later realized that money had been taken from their account at The Bank without their authorization and contacted The Bank about the discrepancy. After such contact, the defendant sent a text message to one of VICTIMS-1, stating that their accounts were mixed up with someone with a similar last name, which, as the defendant then and there knew, was an untrue statement and was meant to conceal her fraudulent scheme. In order to further conceal her fraudulent scheme, the defendant then obtained funds from other customer accounts, without their knowledge or authorization, and deposited such funds into VICTIMS-1's account to make it seem like VICTIMS-1 were made whole.

13. As a further part of her scheme, the defendant obtained funds from a line of credit in the name of VICTIM-2, without VICTIM-2's knowledge or consent, and used such funds for her own personal benefit. In order to conceal her withdrawal of these funds, in or around March 2024, the defendant opened a new line of credit at The Bank for VICTIM-2 without VICTIM-2's knowledge or consent, and the defendant did so by forging VICTIM-2's signature. The defendant then obtained funds under the care and custody of The Bank through this new line of credit and used it to repay some of the money she took from the first line of credit, in order to conceal her scheme.

14. As a further part of her scheme, the defendant obtained funds from various financial accounts of VICTIM-3 through cash withdrawals, without the knowledge or authorization of VICTIM-3. For example, on or about March 28, 2023, the defendant obtained $2,880.60 from an account of VICTIM-3, through a cash withdrawal, without the knowledge or authorization of

VICTIM-3. In order to conceal her scheme, the defendant stated to the teller who effected the cash withdrawal that the transaction was "Per [VICTIM-3]," even though, as she then and there knew, that was a false statement. Based upon the defendant's misrepresentation, the teller wrote "Per [VICTIM-3]" on the withdrawal slip.

15. As a further part of her scheme, the defendant fraudulently obtained and utilized other funds from other victim customers for her own personal purposes, and made misrepresentations to certain customers and to representatives of The Bank that allowed her to conceal her fraud so that she could continue her scheme.

16. The loss to victim customers of The Bank that resulted from the defendant's above-described scheme totaled at least $953,311.34.

**The Charge**

17. By this reference, the allegations set forth in paragraphs 1 through 16 are hereby re-alleged and incorporated by reference as if fully set forth therein.

18. Beginning at least as early as May 24, 2021, and continuing until on or about September 10, 2024, said dates being approximate, in Greene County, in the Western District of Missouri, and elsewhere, the defendant, **CONNIE GOLD**, with the intent to defraud, devised the above-described scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, from The Bank, VICTIMS-1, VICTIM-2, and VICTIM-3, and others.

19. On or about August 16, 2024, said date being approximate, in Greene County, in the Western District of Missouri, and elsewhere, for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, and to obtain money by means of false and fraudulent pretenses, representations and promises, the defendant, **CONNIE**

**GOLD**, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain signs, signals and sounds, that is, the withdrawal of $2,407 from The Bank account number XX0000, in the name of VICTIMS-1, which caused an electronic transmission across state lines in interstate commerce, all in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

20. The United States Attorney re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 19 in this Information for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C).

21. As a result of the offense alleged in Count 1 of this Information, and pursuant to Title 18, United States Code, Section 981(a)(1)(C), the defendant, **CONNIE GOLD**, shall forfeit to the United States all property, real and personal, constituting, or derived from, proceeds traceable to the offense, directly or indirectly, as a result of the violations of law, including but not limited to:

### Money Judgment

22. Not less than $953,311.34 in United States currency, and all interest and proceeds traceable thereto, and a money judgment therefore, representing the proceeds obtained by **CONNIE GOLD**, in that the sum in aggregate, constitutes or is derived from proceeds traceable to the offense set forth in Count 1.

### Substitute Assets

23. If any of the property described in the above paragraph, as a result of any act or omission of the defendant,

a. cannot be located upon the exercise of due diligence;

b. has been transferred to, sold to, or deposited with a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; and/or

e. has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), which is incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant not less than the value of the property described in paragraph 23 above, or elsewhere, as being subject to forfeiture.

Respectfully submitted,

R. MATTHEW PRICE
United States Attorney

[signature]

CASEY CLARK
Assistant United States Attorney

DATED: September 30, 2026
Springfield, Missouri