**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>Plaintiff,<br><br>v.<br><br>**CONNIE GOLD**,<br><br>Defendant. | Case No. 26-03161-01-CR-S-MDH |

**PLEA AGREEMENT**

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri ("the Government") and Connie Gold ("the defendant"), represented by Shane Cantin. The defendant understands and agrees that this plea agreement is only between the defendant and the Government and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified.

**2. Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 1 of the Information that charges the defendant with violating 18 U.S.C. § 1343, that is, wire fraud. The defendant also agrees to forfeit to the Government the property described in the Forfeiture Allegation of the Information. By entering into this plea agreement, the defendant admits to committing this offense and to being guilty of this offense.

**3. Statutory Penalties.** The defendant understands Count 1 of the Information carries the following maximum penalties: not more than 20 years' imprisonment, not more than three years' supervised release, a fine of not more than $250,000, and a $100 mandatory special

assessment that must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony, and that restitution must be ordered as further described below.

**4. Factual Basis for Guilty Plea.** The parties stipulate that the following facts are true and establish both a factual basis for the defendant's guilty plea and the defendant's guilt beyond a reasonable doubt:

> Beginning at least as early as May 24, 2021, and continuing until at least September 10, 2024, in Greene County, in the Western District of Missouri, and elsewhere, the defendant, Connie Gold, voluntarily and intentionally devised and executed a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, from a financial institution ("The Bank") and customers of The Bank, including VICTIMS-1, VICTIM-2, and VICTIM-3.
>
> During this time, the defendant, a resident of Greene County, was a relationship manager for The Bank, a financial institution that had a branch in Springfield, Greene County, Missouri and was headquartered in the state of Texas. The Bank was a financial institution as that term was defined in Title 18, United States Code, Section 20(1), as it was an insured depository institution under the Federal Deposit Insurance Act, Title 12, United States Code, Section 1813(c)(2). Greene County, Missouri is a location within the Western District of Missouri.
>
> As a relationship manager for The Bank, the defendant maintained contact with various customers of The Bank and assisted them with various financial matters involving various types of financial accounts and lines of credit. These customers included residents of the Western District of Missouri and residents of other states.
>
> VICTIMS-1 were each a resident of Rogersville, Missouri, within the Western District of Missouri who were also customers of The Bank who maintained funds at The Bank through their joint financial accounts. VICTM-2 was a resident of Los Angeles, California who was also a customer of The Bank who held a line of credit and maintained funds at The Bank through financial accounts. VICTIM-3 was a resident of Ozark, Missouri, within the Western District of Missouri, who was also a customer of The Bank who maintained funds at The Bank through financial accounts. Neither The Bank, VICTIMS-1, VICTIM-2, or VICTIM-3 authorized the defendant to obtain and use any of their funds for the defendant's own purposes.

Beginning at least as early as May 24, 2021, the defendant devised and executed a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises from The Bank and certain clients, including VICTIMS-1, VICTIM-2, and VICTIM-3. As a part of her scheme, the defendant utilized her position as relationship manager at The Bank to make false representations to various customers of The Bank, including the aforementioned victims, and to employees of The Bank, in order to divert funds from her victim customers and The Bank to herself so that she could use such funds for her own personal purposes.

As a part of this scheme, the defendant obtained funds from customer accounts, including VICTIMS-1 and VICTIM 3, by approaching bank tellers at The Bank and telling them that she had been asked by a customer to withdraw cash from one of their accounts, which she knew at that time was a false statement. The bank teller, relying on the defendant's representations, her position with The Bank, and the trust such customers placed in the defendant through her employment at The Bank, would then withdraw the requested amount of funds from that customer's account, give the defendant the cash, and fill out a bank withdrawal slip that reflected the defendant's false statement. The defendant would then deposit the cash into her own financial accounts and use the funds for her own purposes.

The defendant also obtained funds from The Bank and from customers of The Bank, including VICTIM-2, by utilizing customer lines of credit and, in at least one case, opening a line of credit for a customer without that customer's knowledge or authorization. The defendant then used the funds obtained through customer lines of credit for her own purposes.

On August 16, 2024, in Greene County, within the Western District of Missouri, the defendant obtained $2,407 from an account of VICTIMS-1, through a cash withdrawal that she directed and effected through misrepresentation to employees of The Bank, without the knowledge or authorization of VICTIMS-1. The defendant withdrew this cash for her own personal use and to execute her scheme and artifice to defraud and deprive, and to obtain money by means of false and fraudulent representations. The withdrawal of these funds caused a wire communication to be electronically transmitted across state lines in interstate commerce.

VICTIMS-1 later realized that money had been taken from their account at The Bank without their authorization and contacted The Bank about the discrepancy. After such contact, the defendant sent a text message to one of VICTIMS-1, stating that their accounts were mixed up with someone with a similar last name, which the defendant knew was an untrue statement and was meant to conceal her fraudulent scheme. In order to further conceal her fraudulent scheme, the defendant then obtained funds from other customer accounts, without their knowledge or authorization, and deposited such funds into VICTIMS-1's account to make it seem like VICTIMS-1 were made whole.

The defendant also obtained funds from a line of credit in the name of VICTIM-2, without VICTIM-2's knowledge or consent, and used such funds for her own personal benefit. In order to conceal her withdrawal of these funds, in or around March 2024, the defendant opened a new line of credit at The Bank for VICTIM-2 without VICTIM-2's knowledge or consent, and the defendant did so by forging VICTIM-2's signature. The defendant then obtained funds under the care and custody of The Bank through this new line of credit and used it to repay some of the money she took from the first line of credit, in order to conceal her scheme.

On March 28, 2023, the defendant obtained $2,880.60 from an account of VICTIM-3, through a cash withdrawal that she directed and effected through misrepresentation to employees of The Bank, without the knowledge or authorization of VICTIM-3. As a part of this withdrawal process, the defendant stated to the teller who effected the withdrawal that the transaction was per the direction of the customer account holder, which she knew was untrue. Based upon the defendant's misrepresentation, the teller wrote "Per [VICTIM-3]" on the withdrawal slip.

As a further part of her scheme, the defendant fraudulently obtained and utilized other funds from other victim customers of The Bank for her own personal purposes, and made misrepresentations to certain customers and to representatives of The Bank that allowed her to conceal her fraud so that she could continue her scheme.

The defendant conducted these acts and made these misrepresentations with the intent to defraud so that she could obtain money and property from customers of The Bank, for her own personal benefit. The defendant abused the trust such customers and The Bank placed on her in a manner that significantly facilitated the commission and concealment of her offense. The defendant's above-described conduct and scheme led to her obtaining at least $953,311.34 in fraud proceeds from these customers, which represents the loss that her victims suffered due to her illegal conduct.

**5. Use of Factual Admissions and Relevant Conduct.** The defendant understands and agrees that the facts contained in paragraph 4 and other portions of this plea agreement, as well as admissions the defendant makes during the change of plea hearing, will be used to determine the defendant's guilt and the defendant's advisory sentencing range under the United States Sentencing Guidelines. The defendant likewise understands and agrees that the conduct charged in any dismissed counts of the indictment or information and all other uncharged related

criminal activity may be considered as "relevant conduct" for purposes of calculating the defendant's advisory sentencing range under the Guidelines.

The defendant further understands that Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 ordinarily limit the admissibility of statements made by a defendant during plea discussions or plea proceedings if a guilty plea is later withdrawn. The defendant knowingly and voluntarily waives the rights that arise under those rules and agrees that any such statements, as well as the facts contained in paragraph 4 and other portions of this plea agreement, may be used against the defendant at any time and in any proceeding should the defendant withdraw from this plea agreement.

**6. Sentencing Procedures.** The defendant understands that in determining the appropriate sentence, the Court may impose any sentence authorized by law. While the Court must consider the United States Sentencing Guidelines, the Guidelines are advisory and do not bind the Court. The Court will determine the defendant's advisory sentencing range under the Guidelines at sentencing, but the Court may impose a sentence either above or below that range.

The defendant further understands that the Court will find facts by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the defendant's advisory sentencing range under the Guidelines. The defendant waives any right to a jury finding beyond a reasonable doubt of all facts used to determine the sentence imposed and waives any right to have those facts alleged in an indictment or information. The defendant also understands that in finding the facts relevant to the imposition of the defendant's sentence, the Court may consider any reliable information, including hearsay, and that the Court will not be bound by any recommendation regarding the application of the Guidelines or the sentence to be imposed made by the United States Probation Office or the parties.

The defendant likewise understands that any term of imprisonment the Court may impose will not allow for parole and that in addition to a term of imprisonment the Court may impose a term of supervised release. The defendant further understands that a violation of a condition of supervised release could result in the Court imposing an additional term of imprisonment as well as an additional term of supervised release to follow, both subject to the statutory maximums set forth in 18 U.S.C. § 3583.

**7. Government's Agreements.** Based upon evidence in its possession at this time, the Government agrees not to pursue any additional charges against the defendant for any federal criminal offenses related to wire fraud, bank fraud, aggravated identity theft, and federal taxes, for which it has venue and that arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for murder or attempted murder; physical or sexual violence; aiding and abetting, attempting, soliciting, or conspiracy to commit murder or physical or sexual violence; and any criminal activity currently unknown to the Government.

**8. Preparation of Presentence Report.** The defendant understands and agrees the Government will provide the Court and the United States Probation Office a version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of the defendant's criminal activities. The defendant understands these disclosures are not limited to the count to which the defendant will plead guilty. The Government may respond to comments made or positions taken by the defendant or the defendant's counsel and may correct any misstatements or inaccuracies.

**9. Withdrawal of Plea.** Except for change of plea hearings before a United States Magistrate Judge, either party reserves the right to withdraw from this plea agreement at any

time prior to the United States District Judge formally accepting the defendant's plea of guilty. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible.

If the defendant waives the right to plead guilty before a District Judge and consents to plead guilty before a United States Magistrate Judge, then the parties' rights to withdraw from this plea agreement for any reason terminate upon the Magistrate Judge's completion of the change of plea hearing with a recommendation that the guilty plea be accepted.

After the District Judge accepts the defendant's guilty plea, or the Magistrate Judge completes the change of plea hearing, the defendant may withdraw the plea only if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts the plea, the defendant may not withdraw the plea solely because of the nature or length of the sentence imposed, including if the Court imposes a sentence that is outside the defendant's advisory sentencing range under the United States Sentencing Guidelines or a sentence that the defendant does not expect, like, or agree with.

**10. Agreed Guidelines Applications.** With respect to the application of the United States Sentencing Guidelines to this case, the parties stipulate and agree as follows:

a. The applicable Guidelines Manual is the one that took effect on November 1, 2025.

b. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2B1.1, which provides for a base offense level of at least 7.

c. The parties agree that the loss amount for the defendant's actions under Count 1 is at least $953,311.34, which subjects the defendant to at least a 14-level enhancement under U.S.S.G. § 2B1.1(b)(1)(G).

d. The parties agree that the defendant is subject to a 2-level enhancement under U.S.S.G. § 2B1.1(b)(2) because the offense involved 10 or more victims.

e. The parties agree that the defendant is subject to a 2-level enhancement under U.S.S.G. § 3B1.3 because the defendant abused a position of trust in a

manner that significantly facilitated the commission and concealment of the defendant's offense.

f. The defendant has admitted guilt and clearly accepted responsibility for the defendant's actions, entitling the defendant to a two-level reduction pursuant to U.S.S.G. § 3E1.1(a). In addition, the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Consequently, if the Court finds the defendant's total offense level to be 16 or higher, the defendant is entitled to an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b). This plea agreement constitutes the Government's written motion with the Court for that reduction. This motion will be withdrawn, and the Government will be free to withdraw its recommendation that the defendant receive any reduction for acceptance if, after entering into this plea agreement, the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and the defendant's pretrial release, (2) attempts to withdraw the defendant's guilty plea, (3) violates the law, or (4) otherwise engages in conduct inconsistent with the defendant's acceptance of responsibility as described in U.S.S.G. § 3E1.1 and its commentary.

g. The parties have not reached an agreement regarding the defendant's criminal history category. The parties agree that the Court will determine the defendant's applicable criminal history category after receipt of the presentence report prepared by the United States Probation Office. The parties reserve the right to contest that determination.

h. The Government agrees not to seek an upward departure from the Guidelines or a sentence above the applicable Guidelines range. Additionally, the Government agrees to recommend a sentence no higher than the midpoint of the applicable Guidelines range. However, although the Government does not believe it is appropriate for the defendant to receive a below-Guidelines sentence, the defendant remains free to seek any lawful sentence, including one that is below the defendant's applicable Guidelines range. The agreement restricting the Government's sentencing recommendations, however, does not bind the Court or the United States Probation Office, and the Court may impose any sentence authorized by law.

i. The parties acknowledge and agree that there are no agreements between the parties with respect to any Guidelines issues other than those specifically listed in this paragraph, including its subparagraphs. As to any other Guidelines issues, the parties are free to advocate their respective positions before the Court.

**11. Financial Disclosures.** The defendant will fully and truthfully disclose all assets and property in which the defendant has any interest or over which the defendant exercises direct

or indirect control, including assets and property held by a spouse, nominee, or other third party. These disclosure obligations are ongoing and in force from the execution of this agreement until all financial obligations arising from the defendant's guilty plea—including any forfeiture judgment, restitution order, fine, or assessment—are satisfied in full. The defendant likewise agrees to assist the Government in identifying, locating, returning, and transferring assets for use in payment of restitution, forfeiture, fines, or assessments ordered by the Court.

Within 10 days of signing this plea agreement, the defendant will execute and provide the Government (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submitted to the United States Probation Office. The defendant likewise authorizes the Government to obtain the defendant's credit report. If requested by the Government, the defendant agrees to submit to one or more sworn interviews or depositions regarding the defendant's assets. The defendant understands that the Government will consider compliance with these disclosure obligations when making a recommendation to the Court regarding the defendant's acceptance of responsibility.

**12.** **Restitution.** The defendant understands and agrees that the Court must order restitution to the victims of the offense to which the defendant is pleading guilty and that the Court may order restitution in connection with the conduct charged in any dismissed counts or any uncharged related criminal activity. The defendant further understands that the Government may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order or fine the Court imposes. Pursuant to 18 U.S.C. § 3663(a), the defendant further agrees to pay restitution to the defendant's victims in the aggregate amount of $822,461.34.

**13. Forfeiture.** The defendant agrees that the Government may institute civil, judicial, or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest and that the defendant will not contest any such proceedings. The defendant likewise agrees to forfeit to the Government all interests in any asset the defendant owns, or over which the defendant exercises direct or indirect control, that is subject to forfeiture either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p). The property the defendant forfeits includes, but is not limited to, the following: a money judgment in an amount not less than $953,311.34. With respect to every asset that the defendant agrees to forfeit, the defendant waives all constitutional and statutory challenges—including through direct appeal, habeas corpus, or any other means—to any forfeiture carried out in accordance with this plea agreement, including on the grounds that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution.

The defendant states that the defendant is the sole and rightful owner of the forfeitable property and that to the best of the defendant's knowledge no one else has any ownership or other interest in that property. In the event any federal, state, or local law enforcement agency having custody of the property decides not to pursue its forfeiture, the defendant abandons any interest in that property and consents to the destruction or any other disposition of that property by the federal, state, or local agency without further notice or obligation whatsoever owing to the defendant.

The defendant agrees to take all necessary steps to comply with these forfeiture matters before sentencing.

**14. Government's Reservation of Rights.** The Government reserves the right to comment on the evidence supporting the offense conduct in this case and the right to oppose any position advanced by the defendant at sentencing that might be inconsistent with this plea agreement. The Government also reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The Government further reserves the right to oppose, when consistent with this plea agreement, any arguments the defendant might advance on direct appeal or in post-conviction proceedings. In particular, the Government remains free to defend the legality and propriety of the defendant's sentence on appeal or collateral attack, even if the Court chooses not to follow any recommendation made by the Government.

**15. Waiver of Constitutional Rights.** The defendant understands that a guilty plea is a complete and final admission of guilt, that by pleading guilty the defendant waives certain constitutional rights, and that the Court will adjudge the defendant guilty without a trial. In particular, the defendant acknowledges being advised of, understanding, and knowingly and voluntarily waiving (1) the right to plead not guilty and to persist in a plea of not guilty; (2) the right to be presumed innocent until the defendant's guilt has been established beyond a reasonable doubt at trial; (3) the right to a jury trial; (4) the right to be represented by, and receive the effective assistance of, counsel—and if necessary, have the Court appoint counsel—at trial and at every stage of the proceeding; (5) the right to confront and cross-examine adverse witnesses at trial; (6) the right to be protected from compelled self-incrimination; and (7) the rights to testify, to present evidence, and to compel or subpoena a witness to appear on the defendant's behalf at trial.

**16.** **Loss of Rights.** The defendant understands that by pleading guilty to a felony offense the defendant will lose the right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury. The defendant further understands that during the change of plea hearing, the Court may ask the defendant questions about the offense underlying the defendant's guilty plea, and if the defendant answers those questions under oath and in the presence of counsel, the defendant's answers may later be used against the defendant in a prosecution for perjury or making a false statement.

**17.** **Waiver of Pre-Trial Motions.** The defendant understands the right to file certain pre-trial motions and knowingly and voluntarily withdraws any pending motions, waives the right to have any pending motions resolved, and waives the right to file any additional pre-trial motions in this case. This waiver includes, but is not limited to, any motions based on the statute of limitations, the Speedy Trial Act, or any grounds enumerated in Federal Rule of Criminal Procedure 12(b)(3).

**18.** **Waiver of Appellate and Post-Conviction Rights.** The defendant understands and acknowledges the right to directly appeal the conviction or sentence in this case and any right to challenge the conviction or sentence collaterally through post-conviction proceedings, including through proceedings under 28 U.S.C. § 2255, 28 U.S.C. § 2241, and *corum nobis*. In exchange for the concessions made by the Government in this plea agreement, the defendant knowingly and voluntarily waives all rights to directly appeal or collaterally attack the conviction or sentence on any non-jurisdictional ground except (1) ineffective assistance of counsel, (2) prosecutorial misconduct, or (3) a sentence greater than the statutory maximum.

These are the only non-jurisdictional grounds for direct appeal or collateral attack not waived by this plea agreement.

The grounds for direct appeal or collateral attack that are waived include, but are not limited to, the following: sentencing errors such as a misapplication of the United States Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence; any restitution or forfeiture order; any challenge to the constitutionality of the statute or statutes to which the defendant is pleading guilty or under which the defendant is sentenced; any argument that the defendant's admitted conduct does not fall within the scope of the statute or statutes to which the defendant is pleading guilty; any argument that the defendant's plea was not voluntary; and any argument that the defendant's constitutional rights were violated, other than due to ineffective assistance of counsel or prosecutorial misconduct.

If, however, the Government exercises its right to appeal the sentence imposed under 18 U.S.C. § 3742(b), the defendant is released in part from this waiver and may cross-appeal the sentence imposed as allowed under 18 U.S.C. § 3742(a) with respect to any issues that have not been agreed upon in this agreement.

The defendant acknowledges discussing this appeal waiver with counsel and understanding its terms. The defendant waives any explanation of the terms of this waiver under Federal Rule of Criminal Procedure 11(b)(1)(N).

**19. Order of Prohibition.** The defendant agrees to stipulate and consent to an order of prohibition from any employment with a financial institution throughout the period of any post-sentencing and post-release supervision. The defendant agrees that she will consent to an order of prohibition from further participation pursuant to section 8(e) of the Federal Deposit Insurance Act, 12 U.S.C. § 1818(e), by entering into a stipulation and consent to the issuance of

an order of prohibition from further participation with the Federal Deposit Insurance Corporation.

**20. Waiver of FOIA Request.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974.

**21. Defendant's Breach of Plea Agreement.** If the Court determines the defendant committed any crime or violated any condition of release between the signing of this agreement and the date of sentencing; failed to appear for sentencing; provided intentionally misleading, incomplete, or untruthful information to the Government, the United States Probation Office or the Court; or otherwise breached any term of this plea agreement, the Government will be released from its obligations under this agreement and will retain the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant, however, will remain bound by the terms of this agreement, and will not be allowed to withdraw the guilty plea entered pursuant to this agreement. The defendant likewise will waive the right to challenge the initiation of the dismissed or additional charges following a finding of breach, including by asserting a statute of limitations defense.

**22. Defendant's Representations.** The defendant acknowledges entering into this plea agreement freely and voluntarily after receiving the effective assistance, advice, and approval of counsel. The defendant acknowledges being satisfied with the assistance of counsel and that counsel has fully advised the defendant of the rights and obligations arising from this agreement. The defendant further acknowledges that no threats or promises, other than the terms and conditions of this agreement, have been made by the Government, the Court, the defendant's counsel, or any other person to induce the defendant to enter a plea of guilty.

23. **No Undisclosed Terms.** The parties agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties and that any purported term or condition not expressly set forth in this agreement, or an in camera supplement, is not enforceable.

R. MATTHEW PRICE
United States Attorney

Dated: 09/29/2026

Casey Clark
Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the Information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the United States Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 9/17/26

Connie Gold
Defendant

I am defendant Connie Gold's attorney. I have fully explained to my client her rights with respect to the offense charged in the Information. Further, I have reviewed with my client the provisions of the United States Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with my client. To my knowledge, Connie Gold's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 9/29/2026

Shane Cantin
Attorney for Defendant